**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONTEMPO CARD COMPANY, INC., Plaintiff, v. SUPERIOR BINDERY, INC., and REVOLUTIONARY CLINICS II, INC., Defendants. | Civil Action No. 23-11990 |

**MEMORANDUM AND ORDER**

December 3, 2024

Saris, D.J.

**INTRODUCTION**

Plaintiff Contempo Card Company, Inc. ("Contempo") owns a patent for the "Vault Box," a child-resistant storage container for marijuana products. See U.S. Patent No. 11,358,763 ("'763 patent"). Contempo alleges Defendant Superior Bindery, Inc. ("Superior") infringed the '763 patent by creating a knock-off of the Vault Box. Defendant Revolutionary Clinics II, Inc. ("Rev Clinics"), one of Contempo's former customers, allegedly switched to buying Superior's knock-off despite knowing it infringed the '763 patent. Contempo sues Superior and Rev Clinics ("Defendants") for direct, induced, and contributory infringement.

The parties dispute the construction of seven terms in the '763 patent: (1) "box," (2) "outer box," (3) "inner box,"

(4) "reaching," (5) "retain," (6) "slots are not large enough for a child's finger," and (7) "the contact surfaces." After a hearing, the Court construes the disputed terms as follows:

1. The term "box" means "container."

2. The term "outer box" means "outer container."

3. The term "inner box" means "inner container."

4. The term "reaching" means "to touch or grasp by extending a part of the body or an object."

5. The term "retain" means "hold the inner box within the outer box."

6. The term "slots are not large enough for a child's finger" is not indefinite.

7. The term "the contact surfaces" is not indefinite.

Further, for the reasons stated below, the Court **DENIES** Defendants' Motion to Strike the Affidavit of Vark Markarian (Dkt. 53).

## BACKGROUND

The following facts, drawn from the complaint and the '763 patent, are taken as true.

### I. The Parties

Plaintiff Contempo is a Rhode Island corporation principally doing business in Providence, Rhode Island. Defendants Superior and Rev Clinics are incorporated and headquartered in Massachusetts.

## II. The ’763 Patent

Marijuana is a psychoactive drug used medically and recreationally. A growing number of jurisdictions have legalized its sale and use. As marijuana has become more accessible, “[t]here is a tremendous need for improved child-resistant packaging” to “ensure that children are protected from accidental exposure” to marijuana products. See ’763 patent at 1:61-63, 2:45-49. Contempo is a packaging company that has tapped into this budding market.

Contempo owns the ’763 patent, which discloses a “child-resistant storage container.” See ’763 patent at [57]. Contempo provisionally filed for the ’763 patent in 2018, and the patent was issued on June 14, 2022. See id. at [60], [45]. In general, the ’763 patent teaches a design for a “child-resistant storage container comprising two rigid boxes,” one inside the other, such that there is “enough friction between the contact points of the boxes to retain the inner box in the outer box.” Id. at [57].

The ’763 patent contains only one independent claim, Claim 1. With the disputed claim terms underlined, Claim 1 reads:

> 1. A storage container comprising
>
> an outer box having an interior space,
>
> an inner box capable of being inserted into and contained in the interior space of said outer box, and
>
> a means of accessing the inner box when the inner box is inserted into the outer box provided that there is sufficient friction between the contact surfaces of

> the inner box and the outer box to retain the inner box within the outer box;
>
> wherein said outer box is comprised of five walls and an opening in which to insert the inner box into the interior space of the outer box and the inner box is comprised of four vertical side walls and a bottom horizontal wall, further wherein the length of the inner box is shorter than the length of the outer box provided that when the inner box is inserted into the outer box, the inner box cannot be retrieved by reaching into the outer box and pulling the inner box out of the outer box wherein said means of accessing the inner box when the inner box is inserted into the outer box is one or more slots formed within one or more of the walls of the outer box provided said slots are not large enough for a child's finger to access said inner box; and
>
> further provided that the means of accessing the inner box is the only means in which to extract the inner box from the outer box.

'763 patent at 12:1-26 (emphasis added).

## III. The Dispute

After filing its provisional patent application, Contempo began marketing its packaging design as the "Vault Box." See Dkt. 1 ¶ 12. Contempo marked boxes with the words, "The Vault Box by Contempo Patent Pending" Id. ¶ 15 (emphasis omitted). In December 2018, Superior's representatives contacted Contempo "expressing interest in the Vault Box's innovative design." Id. ¶ 13. Contempo and Superior discussed "the possibility of a relationship involving the licensing" of the Vault Box design "and/or Superior being a domestic contract manufacturer for Contempo." Id. These discussions continued in person at Superior's office and trade

shows. Contempo informed Superior it had a patent pending for the Vault Box.

At some point, discussions between Superior and Contempo broke down. After that, Superior allegedly created a "knock-off version of the Vault Box," "filed its own patent application," labeled its products with "Patent Pending," held the design out as its own invention, and marketed its packaging to Contempo's customers. Id. ¶¶ 16-17 (emphasis omitted).

One of those customers was Rev Clinics. Contempo sold Rev Clinics packaging from 2018 to 2020. The two "worked together to incorporate Rev Clinics' branding onto the Vault Box." Id. ¶ 19. But at some point in 2020, Superior "provid[ed] Rev Clinics with samples of [its] knock-off Vault Box." Id. After that, Rev Clinics "began working with Superior to replace Contempo as [its] supplier," despite knowing Contempo's patent was pending. See id.

## IV. Procedural History

On October 18, 2022, Superior sent Contempo a letter stating it had stopped manufacturing its Vault Box competitor. Contempo responded on March 28, 2023, with notice of Superior's "continued sales of the child resistant storage container" and "an infringement claim chart of claim[s] 1, 3, 4, 6, 9, 11 and 15 of the '763 Patent." Id. ¶ 20. Contempo filed its complaint on August 29, 2023, alleging ongoing infringement of "one or more claims of the '763 Patent." Id. ¶ 23. In their answer, Defendants requested

a declaratory judgment that the ’763 patent is invalid. See Dkt. 10 at 7-8. Now, the parties dispute how to construe Claim 1’s terms.

**LEGAL STANDARD**

Claim construction is an issue of law for the Court. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). “The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history.” Thorner v. Sony Comput. Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012). A person of ordinary skill in the art (“POSITA”) looks to “the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.” Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

Courts begin claim construction with “the language of the claims themselves.” Trs. of Columbia Univ. v. Symantec Corp., 811 F.3d 1359, 1362 (Fed. Cir. 2016). “Claims must be read in view of the specification, of which they are a part.” Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (quoting Phillips, 415 F.3d at 1313). The

specification "is the single best guide to the meaning of a disputed term" and is usually "dispositive." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). However, courts should be careful not to limit the claims to the specific embodiments in the specification. See Phillips, 415 F.3d at 1323.

**DISCUSSION**

## I. Level of Ordinary Skill in the Art

As a preliminary matter, the parties disagree about the definition of the level of ordinary skill in the art. Contempo defines a POSITA as someone who:

> has 5 (five) or more years working in the packaging industry, including the design and manufacturing of child-resistant packaging, has detailed knowledge of the requirements and testing procedures for child-resistant packing, including the laws related thereto, and has a bachelor's degree in either manufacturing, mechanical engineering or the packaging sciences. Alternatively, a person with 20 years of the foregoing experience and expertise, without a bachelor's degree . . . .

Dkt. 41 at 3.

Defendants argue the appropriate level "is simply a person with ordinary skill in the field of manufacturing storage containers, not necessarily child-resistant ones." Dkt. 40 at 4.

In determining the appropriate level of skill in the art, the Federal Circuit directs courts to consider factors such as: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication

of the technology; and (6) educational level of active workers in the field." Best Med. Int'l, Inc. v. Elekta Inc., 46 F.4th 1346, 1353 (Fed. Cir. 2022) (quoting Daiichi Sankyo Co. v. Apotex, Inc., 501 F.3d 1254, 1256 (Fed. Cir. 2007)). The Court may also look to the patent's purpose. See id. In making this determination, the Court must define the "hypothetical person who is presumed to be aware of all the pertinent prior art," while disregarding "[t]he actual inventor's skill [as] irrelevant to the inquiry." Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 454 (Fed. Cir. 1985).[1]

This Court relies on "the patent's teachings as a whole" to determine the appropriate level of skill in the art. Best Med. Int'l, Inc., 46 F.4th at 1354 (affirming the Patent Trial and Appeal Board's decision to make its determination based on patent's teachings as a whole when parties presented limited evidence regarding the POSITA factors).

The '763 patent tries to solve the risk of accidental pediatric exposure to marijuana as the prevalence and legalization

[1]After the hearing, Contempo filed an affidavit from Vark Markarian Sr., Contempo's founder and former CEO, for the Court to consider in its POSITA determination (Dkt. 51-5). Defendants moved to strike the affidavit, arguing that an inventor's affidavit bears no weight in determining a POSITA. See Dkt. 53. However, Markarian is not the inventor of the '763 patent, and motions to strike under Federal Rule of Civil Procedure 12(f) "are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." Boreri v. Fiat S.p.A., 763 F.2d 17, 23 (1st Cir. 1985). Accordingly, the Court denies the motion to strike. Nonetheless, the Court does not rely on the affidavit in reaching its conclusion.

of marijuana grows nationwide. The ’763 patent’s specification contrasts its components with “prior art child resistance storage containers.” ’763 patent at 4:6-19; see also id. at 2:67-3:3. The specification also references the Poison Prevention Packaging Act and 16 C.F.R. Part 1700. See Daiichi, 501 F.3d at 1257 (relying on the problem the patent attempts to solve and the patent’s description to determine the level of ordinary skill in the art).

In addition to the specification’s reference to the Poison Prevention Packaging Act, Claim 2 requires the container to comply with the Poison Prevention Packaging Act and 16 C.F.R. Part 1700. ’763 patent at 12:27-29. Though Claim 2 is not at issue in this case, the Court must determine the level of ordinary skill in the art for the inventions of the ’763 patent as a whole, and not just inventions related to individual claims. When the ’763 patent is viewed “as a whole,” it requires familiarity with child resistance manufacturing and regulations. Accordingly, the level of ordinary skill in the art of the ’763 patent is that of a person with experience in child-resistant storage container manufacturing.

## II. Claim Construction

### A. “box”

| Contempo’s Construction | Defendants’ Construction |
| --- | --- |
| In the ’763 patent, there is no claim term to “a box,” instead there is a claim term to an | “a container, not a sleeve” |

| | |
|---|---|
| "inner box" and an "outer box." Therefore, it is the Plaintiff's position that "outer box" and "inner box" are the proper claim terms to be construed. | |

The parties dispute the construction of the term "box." Contempo asserts that the Court should not construe "box" because it appears in Claim 1 only alongside the modifiers "outer" and "inner." So, Contempo argues, "outer box" and "inner box" are the proper terms to construe. Defendants contend that to construe "outer box" and "inner box," a POSITA would need to determine what "box" means. Defendants propose that a "box" is "a container, not a sleeve." Dkt. 31 at 16-17.

Neither party argues that "box" is a term of art. Where construing a term "involves little more than the application of the widely accepted meaning of [a] commonly understood word[]," the Court may consult the dictionary. Phillips, 415 F.3d at 1314. "Box" is commonly understood to mean "a rigid typically rectangular container with or without a cover." Box, Merriam-Webster, https://www.merriam-webster.com/dictionary/box. Construing "box" to mean "container" accords with the '763 patent's specification, which discloses "a child-resistant storage container" that "is comprised of two rigid boxes." '763 patent at 2:53-55 (emphasis added); see also id. at 4:53-60 (noting that "[t]he top wall" of the inner box "is missing to provide access to the interior space

of the interior rectangular box to store" cannabis products (emphasis added)).

Defendants ask the Court to further limit the term "box" as "not a sleeve" under the doctrine of claim differentiation. Under this doctrine, courts avoid construing "an independent claim. . . as requiring a limitation added by a dependent claim." Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed. Cir. 2006). Claim 8, which depends on Claim 1, requires "a sleeve that fits over the inner box prior to insertion into the outer box." '763 patent at 12:54-56. Defendants argue that as a result, "box" cannot encompass "sleeve." See Dkt. 31 at 17.

The doctrine of claim differentiation is "not a hard and fast rule of construction." Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1368 (Fed. Cir. 2000) (quoting Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998)). Construing "box" simply as "container" neither adds Claim 8's "sleeve" limitation to Claim 1 nor renders Claim 8's limitation superfluous. See Comark, 156 F.3d at 1187. Defendants present no persuasive reason to bake a limitation into the term "box." Thus, the Court construes the term "box" to mean "container."

**B. "outer box" and "inner box"**

| Term | Contempo's Construction | Defendants' Construction |
|---|---|---|
| "outer box" | "a structure having five walls and an opening" | "an outer container, not an outer sleeve" |
| "inner box" | "a structure having four vertical side walls and a bottom horizontal wall" | "an inner container, not an inner sleeve" |

The parties also dispute the construction of "outer box" and "inner box." Contempo urges the Court to construe "outer box" and "inner box" based on what Claim 1 states each is "comprised of." See Dkt. 32 at 11-12. Defendants propose adding "outer" and "inner" to their proposed construction for box, which includes the limitation "not a . . . sleeve." See Dkt. 31 at 17-18.

Having already construed "box" as "container," the Court declines to adopt Defendants' construction. Contempo's construction also goes up in smoke because it would impermissibly render superfluous Claim 1's description of the number of walls the outer and inner boxes are "comprised of." See Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc., 744 F.3d 715, 722 (Fed. Cir. 2014) ("[I]n patent claims as elsewhere, the construction of a clause as a whole requires construction of the parts, with meaning to be given to each part so as to avoid rendering any part superfluous.").

Thus, the Court construes "outer box" as meaning "outer container" and "inner box" as "inner container."

**C. "reaching"**

| Contempo's Construction | Defendants' Construction |
|---|---|
| Plain and ordinary meaning | "to touch or grasp by extending a part of the body or an object" |

The parties agree that "reaching" has no industry-specific meaning. See Dkt. 31 at 20 (Defendants noting that "the term 'reaching' is not a technical or scientific term"); Dkt. 32 at 13 ("The word 'reaching' as used in the claims and specification has no special meaning . . . ."). As a result, the parties agree that "reaching" should be given its plain and ordinary meaning; however, the parties disagree on what that meaning is. Contempo argues that "reaching" requires no further construction because it is readily understandable by a POSITA. In contrast, Defendants propose a specific definition: "reach" means "to touch or grasp by extending a part of the body or an object." Defendants' construction is the plain and ordinary meaning of "reach." See Reach, Merriam-Webster, https://www.merriam-webster.com/dictionary/reach.

Defendants' construction also accords with the '763 patent's claims and specification. Claim 1 describes an inner box that "cannot be retrieved by reaching into the outer box and pulling

the inner box out of the outer box." '763 patent at 12:16-18 (emphasis added). This design furthers the '763 patent's stated purpose of addressing the "need for . . . child-resistant packaging in order to protect children . . ." Id. at 1:61-62. The specification states,

> The objective of the instant invention is that the inner "box" can only be extracted from the outer "box" by inserting a thin object inserted into the slot of the outer "box" and pushing the inner "box" out of the outer "box", however, the slot is not large enough to allow a child's finger to be able to access the inner "box".

Id. at 10:38-43. Adopting Defendants' construction of "to touch or grasp by extending a part of the body or an object" is consistent with the plain meaning of "reach" and the object of the invention -- that the only way to extract the inner box is through the slot in the outer box. As a result, the Court adopts Defendants' construction of "reaching."

**D. "retain"**

| Contempo's Construction | Defendants' Construction |
|---|---|
| "hold the inner box within the outer box even when shook" | "hold the inner box within the outer box" |

Both parties agree that "retain" is afforded its plain and ordinary meaning. Further, the parties agree "retain" means "hold the inner box within the outer box." However, Contempo adds "even

when shook" to the definition. In support of this addition, Contempo argues the abstract and specification discuss retention of the inner box in the context of a small child shaking the box. See, e.g. '763 patent at 2:61-62, 5:1-5, 5:20-23.

Though "the specification is 'the single best guide to the meaning of a disputed term,'" Phillips, 415 F.3d at 1321 (quoting Vitronics, 90 F.3d at 1582), courts must "avoid . . . reading limitations from the specification into the claim," id. at 1323. The references to a child shaking the container are not found in the words of the claim themselves. See Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1324 (Fed. Cir. 2002) ("[C]laim construction . . . begins and ends . . . with the actual words of the claim." (quoting Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998))). In addition, the specification's references to shaking the container are not blunt "expressions of manifest exclusion or restriction, representing a clear disavowal" of defining retain without reference to shaking. Id. at 1325. Accordingly, the Court declines to adopt Contempo's addition and defines "retain" as "hold the inner box within the outer box."

## III. Indefiniteness

Defendants argue the claim terms (1) "slots are not large enough for a child's finger" and (2) "the contact surfaces" are

invalid under 35 U.S.C. § 112(b) because they fail to use reasonably precise language.

35 U.S.C. § 112(b) states that a "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." The Federal Circuit has stated that § 112(b) contains two requirements. First, the claims "must set forth what 'the applicant regards as his invention.'" Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1348 (Fed. Cir. 2002) (quoting Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1377 (Fed. Cir. 2000)). Second, the claim must set forth the invention with "sufficient particularity and distinctness, i.e., the claim must be sufficiently 'definite.'" Id. (quoting Solomon, 216 F.3d at 1377); see also Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 909-10 (2014).

"[A] patent is invalid for indefiniteness if its claims read in light of the specification . . . and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, 572 U.S. at 901. The definiteness requirement "mandates clarity, while recognizing that absolute precision is unattainable." Id. at 910.

**A. "slots are not large enough for a child's finger"**

Defendants argue the term "slots are not large enough for a child's finger" is indefinite because it defines the size of the

slot with a subjective standard, the size of a child's finger. According to Defendants, such a subjective standard fails to provide a POSITA with an objective baseline from which she may define the term. When a court is "faced with a 'purely subjective' claim phrase," as Defendants suggest, the court "must look to the written description for guidance." Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1371 (Fed. Cir. 2014) (quoting Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1351 (Fed. Cir. 2005)). Defendants read the '763 patent's background statistic that "[e]very day in the United States there are 300 children ages 0-19 treated in the emergency department . . . as a result of being poisoned," '763 patent at 1:22-25, to define a child as a person between the ages of zero and nineteen. Because children have variable finger sizes in the first nineteen years of life, Defendants argue a POSITA could not provide a precise claim scope.

Defendants rely heavily on Berkheimer v. HP Inc., 881 F.3d 1360 (Fed. Cir. 2018). In Berkheimer, the Federal Circuit held that the phrase "minimal redundancy" was indefinite. See id. at 1364. The Federal Circuit looked to the specification for a point of comparison that a POSITA could use to determine an objective boundary of "minimal," and found none. Id.; see also Interval Licensing LLC, 766 F.3d at 1372-73 (finding "unobtrusive manner" indefinite after failing to find clarity on the phrase from the specification and prosecution history).

In Berkheimer, the lack of objective boundaries for "minimal" was fatal to the patent's claim; no such fatality exists here. Claim 2 of the '763 patent requires compliance with the Poison Prevention Packaging Act and 16 C.F.R. Part 1700. '763 patent at 12:27-29. Without getting too into the weeds, the specification explains that the purpose of the Poison Prevention Packaging Act was to protect children under five years old from packages containing toxic substances. '763 patent at 1:34-37. A POSITA with experience in manufacturing child-resistant storage containers would be familiar with the age and testing requirements for child-resistant packaging under Federal law. Therefore, unlike in Berkheimer, "the scope of the invention" is reasonably discernible to a POSITA. Nautilus, 572 U.S. at 910. Accordingly, the Court finds the claim phrase "slots are not large enough for a child's finger" sufficiently definite.

**B. "the contact surfaces"**

Defendants argue the term "the contact surfaces" is indefinite because it lacks antecedent basis in the claims. Contempo responds that despite the absence of an explicit antecedent basis, the claim phrase is nonetheless reasonably ascertainable to a POSITA.

"The requirement of antecedent basis is a rule of patent drafting, administered during patent examination." Energizer Holdings, Inc. v. Int'l Trade Comm'n, 435 F.3d 1366, 1370 (Fed.

Cir. 2006). The Federal Circuit has affirmed a finding by the Patent Trial and Appeal Board that a claim term was indefinite when it referenced a previously defined term but lacked a clear antecedent basis. See In re Packard, 751 F.3d 1307, 1310 (Fed. Cir. 2014) (per curiam). Yet, the "failure to provide explicit antecedent basis for terms does not always render a claim indefinite." Energizer, 435 F.3d at 1370 (quoting Manual of Patent Examining Procedure § 2173.05(e) (8th ed., rev. 2 May 2004)); see also In re Downing, 754 F. App'x 988, 996 (Fed. Cir. 2018) ("[A] claim term that lacks an antecedent basis may, but does not necessarily, render a claim indefinite."). Instead, a court must decide whether a claim term lacking an antecedent "has a reasonably ascertainable meaning . . . in context." Energizer, 435 F.3d at 1370.

Claim 1 in relevant part describes "a means of accessing the inner box when the inner box is inserted into the outer box provided that there is sufficient friction between the contact surfaces of the inner box and the outer box to retain the inner box within the outer box." '763 patent at 12:6-10 (emphasis added). A POSITA with experience in manufacturing child resistant storage containers would ascertain that "the contact surfaces" refer to the surfaces of the inner and outer box in contact with one another. As a result, the Court finds that the claim term "the contact surfaces" is sufficiently definite.

**ORDER**

For the reasons stated above, the Court **DENIES** Defendants' Motion to Strike the Affidavit of Vark Markarian (Dkt. 53) and construes the disputed terms as follows:

1. The term "box" means "container."

2. The term "outer box" means "outer container."

3. The term "inner box" means "inner container."

4. The term "reaching" means "to touch or grasp by extending a part of the body or an object."

5. The term "retain" means "hold the inner box within the outer box."

6. The term "slots are not large enough for a child's finger" is not indefinite.

7. The term "the contact surfaces" is not indefinite.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge